CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

CHARLES F. BISESTO (CABN 271353)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6405
    FAX: (415) 436-7234
    Charles.Bisesto@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. 5:23-CR-00123-001 EJD |
|     Plaintiff, | )<br>) UNITED STATES' SENTENCING |
|     v. | ) MEMORANDUM<br>) |
| ARNULFO BENITEZ, | ) Date: May 19, 2026<br>) Time: 2:00 p.m. |
|     Defendant. | ) The Honorable Edward J. Davila<br>) |

## I.    INTRODUCTION

On November 25, 2024, Arnulfo Benitez pleaded guilty to Count Four of the Indictment, charging him with distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii). PSR ¶¶ 1, 3. The offense conduct was serious. Over the course of several months in 2022, Benitez participated in controlled drug transactions involving cocaine, methamphetamine, and fentanyl. PSR ¶¶ 15-24. In the transaction underlying Count Four, Benitez sold methamphetamine to an undercover agent in a Salinas parking lot after coordinating the deal and arriving with co-defendant Richard Izquierdo. PSR ¶¶ 21-22.

At the same time, this case is in a different posture than an ordinary drug-distribution sentencing. As part of the parties' plea agreement, Benitez agreed to participate in the Convictions Alternative Program ("CAP"). Dkt. 99, ¶ 7. The parties agreed that if Benitez successfully completed CAP, "an

appropriate disposition of this case under the Sentencing Guidelines and 18 U.S.C. § 3553(a) is a non-custodial (or time-served) sentence." *Id*.  The government further agreed that, if Benitez successfully completed CAP, it would recommend a non-custodial or time-served sentence.  Dkt. 99, ¶ 16.

Benitez has now earned that recommendation.  He was accepted into CAP on March 11, 2025.  PSR ¶ 8.  According to Pretrial Services, he demonstrated substantial progress, developed insight into the impact of his substance abuse, remained committed to recovery during the difficult period following his brother's overdose death, complied with all court-ordered conditions of release, and successfully completed the program.  *Id*.  Probation likewise recommends a time-served sentence.  PSR Sentencing Recommendation at 1-3.

The government therefore recommends a sentence of time served, followed by a term of supervised release with the conditions recommended by Probation.  That sentence is consistent with the parties' plea agreement, reflects Benitez's successful completion of CAP, and is sufficient but not greater than necessary under 18 U.S.C. § 3553(a).

## II.    FACTS

In August 2021, Department of Homeland Security agents began investigating Benitez after a confidential source reported that he could obtain cocaine from an individual known as "Nufo."  PSR ¶ 13.  Agents later identified "Nufo" as Arnulfo Benitez, obtained a search warrant for his Snapchat account, and reviewed communications and images that appeared consistent with narcotics trafficking.  *Id*.  In March 2022, agents obtained cell-site location information for Benitez's phone and confirmed his residence in Salinas, California.  PSR ¶ 14.

On July 1, 2022, agents arranged a controlled purchase from Benitez.  PSR ¶ 15.  During that transaction, the confidential source purchased approximately 27 grams net of cocaine and approximately 496 grams net of methamphetamine.  *Id*.  According to the confidential source, co-defendant Ernesto Aban-Benitez supplied the cocaine and methamphetamine.  *Id*.  Laboratory testing later confirmed the substances as cocaine and methamphetamine.  PSR ¶ 16.

On October 20, 2022, Benitez participated in a fentanyl transaction involving counterfeit M30 pills.  PSR ¶¶ 17-19.  Benitez had communicated with the confidential source about obtaining "blues" and quoted a price of $3,200 for a "boat" of pills.  PSR ¶ 17.  The undercover agent later purchased

1,000 M30 pills from Benitez for $3,200.  PSR ¶ 18.  Laboratory testing showed the pills weighed approximately 108.9 grams net and contained fentanyl.  *Id*.  Agents later determined that Benitez had obtained the pills from co-defendant Oscar Benitez.  PSR ¶ 19.

On November 23, 2022, Benitez arranged two separate methamphetamine transactions with an undercover agent.  PSR ¶¶ 21-24.  During the first transaction, Benitez met the undercover agent at a Best Buy parking lot in Salinas and sold methamphetamine for $4,000.  PSR ¶ 21.  Before the transaction, agents observed Benitez leave his residence and pick up another male, later identified as co-defendant Richard Izquierdo.  *Id*.  Izquierdo was in the passenger seat when the undercover agent entered Benitez's vehicle.  PSR ¶ 22.  The drugs from that transaction were later determined to be approximately 388 grams net of methamphetamine.  PSR ¶ 21.

Later that same day, Benitez met the undercover agent again, this time at an Ulta parking lot in Salinas, and sold additional methamphetamine for $3,600.  PSR ¶¶ 23-24.  Agents observed Benitez meet with an individual later identified as co-defendant Jose Tapia shortly before and shortly after the transaction.  PSR ¶¶ 23-25.  The methamphetamine from that second transaction weighed approximately 442.3 grams net.  PSR ¶ 24.

On November 25, 2024, Benitez pleaded guilty to Count Four of the Indictment.  PSR ¶ 3.  Following his change of plea, the Court deferred referral to Probation and referred Benitez to CAP.  PSR ¶ 7.  Benitez was accepted into CAP on March 11, 2025.  PSR ¶ 8.  During CAP, Benitez participated in treatment, maintained sobriety, remained employed, and complied with all court-ordered conditions.  *Id*.

### III.    SENTENCING GUIDELINES CALCULATIONS

The government respectfully disagrees with Probation's use of "actual" methamphetamine in the Guidelines calculation.  The parties agreed in the plea agreement that Benitez was responsible for approximately 1,326 grams of methamphetamine, approximately 108.9 grams of fentanyl, and approximately 27 grams of cocaine.  Dkt. 99, ¶¶ 2(d), 7.  Treating the methamphetamine as "a mixture or substance containing methamphetamine," the parties agreed that those quantities resulted in a converted drug weight of 2,927.4 kilograms and a base offense level of 30.  Dkt. 99, ¶ 7; PSR ¶ 4.

That calculation was not accidental.  It reflected the facts known to the parties at the time of the plea and remains consistent with the laboratory results, which showed methamphetamine mixed with at

least some other substance.  The reports showed high purity levels, but they did not show entirely pure methamphetamine.  For that reason, the parties treated the methamphetamine as a mixture or substance containing methamphetamine for Guidelines purposes, rather than "actual" methamphetamine.

Probation's revised calculation departs from that approach.  After receiving lab reports showing high purity levels for some of the methamphetamine, Probation used "actual" methamphetamine for the July 1, 2022 and November 23, 2022 transactions.  PSR ¶ 32.  That change increased the converted drug weight to 19,817.4 kilograms and raised the base offense level from 30 to 34.  *Id*.  After applying safety valve and acceptance of responsibility, Probation calculated a total offense level of 29 and an advisory range of 87 to 108 months.  PSR ¶¶ 32-41, 80.

The government does not dispute that purity results are relevant and important for this Court to consider.  But here, the mixture-and-substance calculation better reflects the facts, the lab results, and the parties' agreed Guidelines framework.  The government therefore respectfully requests that the Court adopt the parties' agreed calculation.

Under the parties' agreed calculation, Benitez's base offense level is 30 under U.S.S.G. § 2D1.1. Plea Agreement ¶ 7; PSR ¶ 4.  The parties agree that Benitez qualifies for safety valve relief under 18 U.S.C. § 3553(f).  Dkt. 99, ¶ 7; PSR ¶¶ 33, 79.  Benitez also receives a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1.  PSR ¶¶ 39-40.  With safety valve and acceptance applied, the total offense level is 25.  PSR ¶ 4.  Benitez has zero criminal history points and falls in Criminal History Category I.  PSR ¶¶ 42-46.  A total offense level of 25 and Criminal History Category I results in an advisory Guidelines range of 57 to 71 months.

## A. Applicable Law

The Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, deter others from committing similar crimes, protect the public from the defendant, and rehabilitate the defendant.  18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).  Section 3553 sets forth several factors that the Court must consider in determining a just sentence: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Guidelines range for sentences; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing

UNITED STATES' SENTENCING MEMO.                4
CR 23-123-001 EJD

disparities; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a); *Carty,* 520 F.3d at 991. The Guidelines should be the starting point and the initial benchmark. *Gall v. United States*, 552 U.S. 38, 49 (2007). Though the guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Rita v. United States,* 551 U.S. 338, 350 (2007).

### B. Recommended Sentence

The government recommends a sentence of time served. That recommendation is consistent with the plea agreement, reflects Benitez's successful completion of CAP, and is sufficient but not greater than necessary under 18 U.S.C. § 3553(a).

The government does not minimize the seriousness of Benitez's conduct. This was not a minor drug offense or an isolated lapse in judgment. Benitez participated in multiple drug transactions involving significant quantities of methamphetamine, cocaine, and fentanyl. PSR ¶¶ 15-24. On July 1, 2022, he distributed approximately 27 grams of cocaine and approximately 496 grams of methamphetamine. PSR ¶¶ 15-16. On October 20, 2022, he distributed approximately 1,000 counterfeit M30 pills containing fentanyl. PSR ¶¶ 17-19. And on November 23, 2022, he participated in two separate methamphetamine transactions, distributing more than 800 grams of methamphetamine in a single day. PSR ¶¶ 21-24. These were dangerous drugs, distributed in substantial quantities, and Benitez's conduct contributed to the same cycle of addiction and community harm that he now recognizes affected his own life and family.

At the same time, this case is before the Court in a unique posture. The parties agreed that if Benitez successfully completed CAP, "an appropriate disposition of this case under the Sentencing Guidelines and 18 U.S.C. § 3553(a) is a non-custodial (or time-served) sentence." Dkt. 99, ¶ 7. The government also agreed that, upon successful completion of CAP, it would recommend a non-custodial or time-served sentence. Dkt. 99, ¶ 16. Benitez has done what the agreement required. He was accepted into CAP in March 2025, successfully completed the program, complied with all court-ordered conditions, maintained sobriety, and demonstrated accountability, stability, and a sustained commitment to rehabilitation. PSR ¶ 8.

The Court must also consider Benitez's history and characteristics, his post-offense

UNITED STATES' SENTENCING MEMO.          5
CR 23-123-001 EJD

rehabilitation, and the need for a sentence that is sufficient but not greater than necessary.  18 U.S.C. § 3553(a).  Benitez has no criminal history points.  PSR ¶¶ 42-46.  Since his arrest, he has maintained steady employment, participated in treatment, remained sober, moved away from negative influences, and focused on supporting his wife and two young children.  PSR ¶¶ 57-60, 64, 68-73.  He also maintained his recovery after his brother died from a drug overdose, using therapy, family support, and CAP resources to avoid relapse during an especially difficult period.  PSR ¶¶ 8, 53, 56, 64, 68.

A time-served sentence does not diminish the seriousness of the offense.  Rather, it reflects Benitez's successful completion of CAP, his sustained compliance on pretrial release, and the substantial rehabilitation he has demonstrated since his arrest.  A term of supervised release will provide continued accountability, treatment, monitoring, and support, while also reinforcing the progress Benitez has made through CAP.  On this record, Benitez has earned the recommendation contemplated by the plea agreement.

**IV.    CONCLUSION**

For the reasons set forth above, the United States respectfully requests that the Court adopt the parties' agreed Guidelines calculation, and sentence defendant Arnulfo Benitez to time served, followed by a term of supervised release with the conditions recommended by Probation.

DATED: May 12, 2026                                Respectfully submitted,

                                                   CRAIG H. MISSAKIAN
                                                   United States Attorney

                                                      /s/ *Charles F. Bisesto*
                                                   CHARLES F. BISESTO
                                                   Assistant United States Attorney

UNITED STATES' SENTENCING MEMO.          6
CR 23-123-001 EJD